# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JONATHAN FIGUEROA, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No.   14 C 9238 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| CORRECTIONS OFFICER MASON, COOK ) | |
| COUNTY, SHERIFF TOM DART, ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jonathan Figueroa sues defendants, Corrections Officer Mason, Cook County, and Sheriff Tom Dart, pursuant to 42 U.S.C. § 1983 for claims arising out of his medical care during his pretrial detention in the Cook County Jail ("the Jail"). He alleges that Officer Mason was deliberately indifferent to his objectively serious medical condition, a MRSA infection. Defendant has moved for summary judgment. For the following reasons, the Court grants the motion.

## BACKGROUND

On September 25, 2014, while detained in Division 9 of the Jail, plaintiff felt ill and noticed a pain on the left side of his neck. (Pl.'s LR 56.1(b)(3)(B) Resp. ¶ 7, ECF No. 49.)[1] On the morning of September 27, 2016, plaintiff's neck swelled up, and at some time between 7:00 a.m. and 7:30 a.m., plaintiff told defendant Kenneth Mason, a correctional officer who was working on plaintiff's tier that day, that he needed medical attention. (*Id.* ¶ 15; Pl.'s LR 56.1 (b)(3)(C) Stmt. ¶ 2, ECF NO. 49.) Mason observed a red bump on plantiff's neck, which was

---

[1] Defendants move to strike plaintiff's Local Rule 56.1(b)(3) response for smuggling in additional facts, citing evidence that is improperly speculative, and improperly including argument. On the whole, plaintiff's Local Rule 56.1(b)(3) response achieved its purpose of aiding the Court by directing it to evidence in the record that supported plaintiff's position.   Defendants' motion to strike will be denied.

oozing liquid. (Defs.' Resp. to Pl's LR 56.1(b)(3)(C) Stmt. ¶ 3-4.)

At approximately 9 a.m., when he believed someone would be on duty at the Division 9 dispensary, Mason contacted the medical staff to see what could be done for plaintiff. (Pl.'s LR 56.1(b)(3)(B) Resp. ¶ 19.) He informed them that plaintiff had a growth or a large red bump on the left side of his neck, he was in severe pain, and the problem had been going on for at least three days. (*Id.*) The medical staff informed Mason that this was not an emergency and he should direct plaintiff to fill out a medical request form for the nurse to pick up when she stopped by the tier to dispense medication. (*Id.* ¶ 20.)[2] Mason provided plaintiff with a medical request form and told him that when the nurse came to the tier, he would have her examine plaintiff's neck. (*Id.* ¶¶ 21-23.) Further, he told plaintiff that if she did not enter the tier but merely dropped off medication in the interlock area, he would let plaintiff out of his cell to see her. (*Id.* ¶ 24.)

At some point on September 27, plaintiff saw a nurse, but the parties dispute when, where and how.

Mason testified at his deposition that the nurse came to the tier at approximately 1:30 p.m. to dispense medication and, as he had offered to do, Mason brought plaintiff out of his cell to see her while she was there. According to Mason, plaintiff and the nurse spoke for a few moments—Mason's understanding was that the nurse told plaintiff he had already been seen for this complaint—and then Mason took plaintiff back to his cell, where he remained until Mason left at the end of his shift at 3 p.m. (Defs.' LR 56.1(a)(3) Stmt., Ex. C, at 42:4-17, 58:8-66:2, ECF No. 44-3.)

Plaintiff testified that he did not see the nurse when she came to the tier to dispense

---

[2] Plaintiff purports to "dispute" the fact that plaintiff received this response from medical staff, but in the same breath he admits that he "lacks personal knowledge to agree or disagree," and he cites no contrary evidence.

medication, and he received no medical attention by the end of the dayroom period at 6:30 p.m. At that point, the inmates were all to "lock up" for the night, but plaintiff refused to return to his cell until he received medical attention. Mason berated him, called him a liar, and announced to all the inmates on the tier that they would lose dayroom privileges because of plaintiff's disobedience. Plaintiff still refused to return to his cell, and he was placed in the interlock area, where he had to wait a couple of hours for Mason to escort him to the dispensary. (Defs.' LR 56.1(a)(3) Stmt., Ex. B, at 58:13-65:7, ECF No. 44-2.) Later that night, a nurse did give plaintiff a dose of Motrin, but he received no other medical attention until September 29, when he was diagnosed with MRSA and received antibiotics. (Am. Compl. ¶¶ 18-24.)

Plaintiff filed a number of grievances arising out of the medical care he received for his MRSA infection (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 21-28), including a timely grievance against Mason, which was given the control number 2014x5870 (Defs.' LR 56.1(a)(3) Stmt. ¶¶ 37-39, ECF No. 44). Plaintiff generally received prompt responses to his grievances. (*See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 21-28.) He filed his initial complaint in this matter on November 17, 2014, before he received any response to grievance 2014x5870. (ECF No. 1.) He later received a response to the grievance on December 7, 2014, and he appealed the decision. (Defs.' LR 56.1(a)(3) Stmt. ¶ 40.)

## ANALYSIS

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing

summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). A genuine dispute is one that could change the outcome of the suit, and is supported by evidence sufficient to allow a reasonable jury to return a favorable verdict for the non-moving party. *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010).

Defendants contend that they are entitled to summary judgment because (1) plaintiff failed to exhaust administrative remedies, and (2) Mason did not act with deliberate indifference to a serious medical need.

**Exhaustion of Administrative Remedies**

Defendants argue that plaintiff failed to exhaust his claims through the Jail grievance process. The Prison Litigation Reform Act (PLRA) instructs that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006). A pretrial detainee is required to utilize a jail grievance system before filing a § 1983 claim to make jail officials aware of alleged ongoing problems and to give them an opportunity to take corrective action to remedy the problem. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Dole*, 438 F.3d at 809; *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999).

The Jail grievance process consists of two steps. First, an inmate must submit a grievance within fifteen days of the incident, and Cook County Department of Corrections ("CCDOC") has

fifteen business days to respond. (Pl.'s LR 56.1(b)(3)(C) Resp. ¶ 34.) If the inmate is unsatisfied with the response, the inmate must appeal within fourteen days. (*Id.*)

It is undisputed that plaintiff filed this lawsuit before he received a response to the grievance he filed against Mason based on the events of September 27, 2014. Defendants contend, therefore, that he failed to exhaust his administrative remedies. Plaintiff contends that CCDOC's response was due in mid-October, and plaintiff waited several weeks after that to file his complaint in mid-November. At that point, plaintiff argues, CCDOC's failure to respond had made any remedies via the grievance process "unavailable." *See Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005).

Plaintiff is correct that "administrative remedies [are] exhausted when prison officials fail to respond to inmate grievances because those remedies [have] become unavailable." *Id.* (internal citations and quotation marks omitted). Numerous courts of this district have held, however, that an inmate may not proceed directly to the courts when he does not receive an immediate response to his grievance; before claiming that his administrative remedies are exhausted due to prison officials' failure to respond to his grievance, he must "follow up" with prison authorities, especially if he is familiar with the grievance process and knows to expect a response within a certain time frame. *See Goldsmith v. Zolecki*, No. 12 C 3965, 2013 WL 5699302, at *6 (N.D. Ill. Oct. 18, 2013) ("Simply submitting a grievance and not receiving a response is insufficient to establish that the grievance process is unavailable.") (citing cases). Plaintiff does not claim to have followed up on grievance 2014x5870. He states only that he received timely responses to his other grievances, apparently to suggest that when he did not receive a timely response to 2014x5870, he logically assumed that none was forthcoming. But

the fact that he received timely responses to his other grievances cuts two ways: it also shows that plaintiff was familiar with the grievance process and should have known to follow up, as the plaintiff in *Brengettcy* did. *See Taylor v. Cook Cty.*, No. 11 C 7427, 2013 WL 2285806, at *4-5 (N.D. Ill. May 23, 2013) ("Plaintiff's lethargy is highlighted by the fact that he received a response to a separate grievance he filed on the same day he filed the grievances at issue here. Despite this, he made no effort to learn the status of his other grievances."). Plaintiff failed to exhaust his administrative remedies, and defendants are entitled to summary judgment.

**Deliberate Indifference**

Because the Court has already determined that plaintiff failed to exhaust his administrative remedies, it need not address the merits of plaintiff's deliberate indifference claim. However, even if it were necessary to reach the merits, the Court would conclude that defendants are entitled to summary judgment.

Jail officials violate an inmate's constitutional rights "when they display 'deliberate indifference to serious medical needs'" of the inmate. *See Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see also Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998) (explaining that deliberate indifference claims brought by pretrial detainees against jail personnel arise under the Fourteenth Amendment rather than the Eighth Amendment but are analyzed under the same standard). Jail officials may exhibit deliberate indifference to a known condition through inaction, *Gayton v. McCoy*, 593 F.3d 610, 623-24 (7th Cir. 2010); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009), or by delaying necessary treatment and thereby aggravating an injury or needlessly prolonging an inmate's pain, *Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012). A plaintiff

6

must show both that he suffered from an objectively serious medical condition and that the defendant disregarded a serious risk to the inmate's health, which requires more than mere negligence:

> The officials must know of and disregard an excessive risk to inmate health; indeed they must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also draw the inference. This is not to say that a prisoner must establish that officials intended or desired the harm that transpired. Instead, it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk.

*Greeno*, 414 F.3d at 653 (internal citations and quotation marks omitted).[3]

Mason contends that he was not a medical staff member and he discharged his duties appropriately by calling the dispensary and seeking guidance from a medical staff member as to how to handle plaintiff's complaints. Medical staff at the dispensary told Mason that the matter was not an emergency and he should direct plaintiff to submit a medical request form, which Mason did; according to Mason, he was not required to do more because the matter had now been referred to the medical staff, upon whose judgment he was entitled to rely. Further, although the timing and precise circumstances are in dispute, it is undisputed that at some point, after plaintiff insisted he needed urgent medical attention, Mason took plaintiff to see a nurse.

The Court agrees that the evidence does not support plaintiff's claim of deliberate indifference. Mason is correct that nonmedical prison officials who have referred an inmate's complaint to medical officials will "generally be justified in believing that the prisoner is in

---

[3] Defendants also argue that they are entitled to summary judgment based on qualified immunity, but that argument is out of place in the present context. If there are genuine issues of fact concerning the elements of plaintiff's constitutional claim of deliberate indifference, then defendants cannot avoid trial on qualified immunity grounds because "no one . . . could reasonably have believed that he could have deliberately ignored a known threat or danger." *See Delgado-Brunet v. Clark*, 93 F.3d 339, 345 (7th Cir. 1996). Thus, in a case such as this, the constitutional deliberate indifference and qualified immunity inquiries "effectively collapse into one." *Id.*; *see also Cox v. Quinn*, 828 F.3d 227, 238 n.4 (4th Cir. 2016) ("deliberately indifferent conduct can never be objectively reasonable for purposes of qualified immunity") (citing *Walker v. Benjamin*, 293 F.3d 1030, 1037–38 (7th Cir. 2002)).

capable hands." *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (citing *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). Plaintiff's wound was not one that, by itself, obviously demanded immediate medical attention. Plaintiff attempts to characterize Mason's statement at his deposition that he would generally get immediate medical attention for any inmate who was leaking bodily fluid as a concession of indifference to plaintiff's serious medical condition (Pl.'s Mem. Opp., at 6-7, ECF No. 48), but Mason made this remark in the context of a discussion about another inmate not involved in this case who had been bleeding profusely; the same logic does not necessarily apply to a sore that was leaking some other sort of fluid. Mason called medical staff at the dispensary, described plaintiff's malady, sought advice as to how to proceed, and received instructions from medical staff, and he was entitled to act according to those instructions. *See Greeno*, 414 F.3d at 656 ("Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on.") (citing *Spruill*, 372 F.3d at 236). Plaintiff cannot prevail on a claim of deliberate indifference merely because Mason did not handle plaintiff's complaint in precisely the way plaintiff demanded. *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) ("[A] mere disagreement with the course of the inmate's medical treatment does not constitute [a constitutional] claim of deliberate indifference.") (citing *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1991)) (internal quotation marks and alterations omitted).

Nevertheless, a nonmedical prison official may be deliberately indifferent when he has "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (citing *Spruill*, 372 F.3d at 236). Plaintiff argues that he complained of severe pain all day on September 27, 2014,

8

and Mason should have recognized that he could not wait for medical attention. Further, he argues that Mason's failure to take any action unnecessarily prolonged his pain for hours. *See Gil v. Reed*, 381 F.3d 649, 661-62 (7th Cir. 2004). If a reasonable jury could conclude, based on Mason's knowledge of plaintiff's sore combined with plaintiff's persistent complaints of pain, that Mason knew of a substantial risk that plaintiff was in serious pain and disregarded the risk by failing to procure immediate medical attention, then plaintiff's claim must survive summary judgment. *See Greeno*, 414 F.3d at 653; *see also Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) ("deliberate indifference to prolonged, unnecessary pain can itself be the basis for a [constitutional] claim"); *Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007) ("unnecessarily prolong[ing] and exacerbat[ing] plaintiff's] pain" meets standard for deliberate indifference to serious medical need).

As stated above, Mason contacted medical staff early on the morning of September 27, and he was told that this wound was not an emergency requiring immediate treatment and that plaintiff would receive treatment in due course if he filled out a medical request slip. Plaintiff admits that when he later sought to force the issue by refusing to return to his cell until he received medical attention,[4] Mason kept him in the interlock area for a period of time[5] and called him a liar, but he begrudgingly took him to see a nurse. This case is not like *Gil*, in which the defendant was accused of maliciously refusing to give plaintiff his prescribed medication, thereby *intentionally and knowingly* causing him to endure pain he would not otherwise have had to endure; plaintiff's

---

[4] Bizarrely, Mason did not discuss this incident at all at his deposition; indeed, Mason stated that he was long gone for the day by 6:30 p.m. But in any case, the Court must view the facts in the light most favorable to plaintiff, the non-moving party.

[5] To the extent that this delay may be a focus of plaintiff's claim, it was a minor delay that cannot support a claim of deliberate indifference. *See Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009) (two-and-a-half-hour delay was "minimal").

own testimony reveals that Mason did not believe that the situation warranted immediate medical attention because he believed plaintiff was *lying* about being in serious pain. Under these circumstances, even viewing the evidence in the light most favorable to plaintiff, the evidence does not support a reasonable inference that Mason was subjectively aware of an excessive risk to plaintiff's health. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, ***and he must also draw the inference***.") (emphasis added).

Additionally, despite the fact that medical staff had advised him to direct plaintiff to submit a medical request slip and wait until medical staff was able to respond, and despite the fact that he believed that plaintiff was lying or malingering, Mason ultimately did as plaintiff asked. Rather than order, or forcibly remove, plaintiff back to his cell, Mason took plaintiff to the dispensary anyway. Mason cannot be said to have disregarded the risk that plaintiff was in serious pain.

Mason is entitled to summary judgment on plaintiff's deliberate indifference claim. Plaintiff also names as defendants Cook County and Cook County Sheriff Tom Dart, but he cannot prevail against these defendants if he cannot prevail against the individual defendant Mason. *Swanigan v. City of Chi.*, 775 F.3d 953, 962 (7th Cir. 2015). All defendants are entitled to summary judgment.

## **CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment [42] is granted. Defendants' motion to strike [54] is denied.   Civil case terminated.

**SO ORDERED.**                                                   **ENTERED**: September 29, 2016

                                                                                     _____
                                                                                    **HON. JORGE L. ALONSO**
                                                                                    **United States District Judge**